## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF KANSAS

STEVEN L. RAGSDALE,

     *Plaintiff,*

  vs.

                                   Case No. 13-2257-EFM

AMSTED RAIL COMPANY, INC.,
d/b/a Griffin Wheel,

     *Defendant.*

## MEMORANDUM AND ORDER

Plaintiff Steven Ragsdale asserts a claim for workers' compensation retaliation against Defendant Amsted Rail Company, Inc., which does business as Griffin Wheel in Kansas City, Kansas. This matter comes before the Court on Amsted Rail's Motion for Summary Judgment (Doc. 55). Because the Court finds that Ragsdale has failed to meet his burden to show a genuine issue of material fact as to whether Amsted Rail's reason for terminating him is pretextual, the Court grants Amsted Rail's motion for summary judgment.

### I. Factual and Procedural Background

Defendant Amsted Rail Company, Inc., operates Griffin Wheel, a steel foundry that manufactures railroad car wheels in Kansas City, Kansas. From 2001 through June 21, 2012, Plaintiff Steven Ragsdale worked at the Griffin Wheel facility in molding and on the furnace

floor as a furnace operator and foreman. Ragsdale reported at least 15 work injuries during his employment with Amsted Rail.

Ragsdale received an overpayment of unemployment benefits while he was employed by Amsted. In 2009, the Griffin Wheel facility occasionally closed because of the economic downturn and lack of work. During these shutdowns, Ragsdale and other employees collected unemployment benefits through the state of Kansas. But when the facility reopened, Ragsdale continued to collect unemployment benefits while working. Ragsdale represented to the state that he earned no wages for at least 54 weeks from 2008 to 2010 while he was working and receiving a paycheck from Amsted Rail. Ragsdale does not dispute that he received between $407 and $448 in unemployment benefits each week.

In 2010, the Kansas Department of Labor sent Ragsdale a letter indicating that he owed $22,091 for the overpayment of unemployment benefits. Ragsdale did not appeal that determination. Ragsdale reported a work-related back injury in November 2011 and filed a workers' compensation claim on December 28, 2011. He was released to work without restrictions in January 2012.

In the spring of 2012, Brian Robinson, Griffin Wheel's manager of human resources and safety, received a report of unemployment benefit charges from the state. The report listed employees, including Ragsdale, and noted the amounts charged against Amsted Rail's unemployment account. Gina McCullough, the director of human resources, asked Robinson to investigate. Robinson's investigation revealed that six current employees, including Ragsdale, claimed unemployment benefits while working at Griffin Wheel.

Robinson presented a formal report to McCullough and recommended termination of the six employees' employment. Wayne Luce, Amsted Rail's vice president of human resources,

participated in a conference call with McCullough, Robinson, and Michael DeCola, the Griffin Wheel plant manager. On June 21, 2012, Amsted Rail terminated the employment of Ragsdale and five other employees. Amsted Rail told Ragsdale his employment was terminated because he improperly collected unemployment benefits for a time period when he was working at Amsted.

Ragsdale filed suit against Amsted Rail in April 2013. Amsted Rail removed to this Court in May 2013. Ragsdale alleges that he was discharged in retaliation for a workplace injury and filing a workers' compensation claim.[1] Amsted Rail has filed a motion for summary judgment, which is now before the Court.

## II. Legal Standard

Summary judgment is appropriate if the moving party demonstrates that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law.[2] A fact is "material" when it is essential to the claim, and issues of fact are "genuine" if the proffered evidence permits a reasonable jury to decide the issue in either party's favor.[3] The movant bears the initial burden of proof and must show the lack of evidence on an essential element of the claim.[4] If the movant carries this initial burden, the nonmovant that bears the burden of persuasion at trial may not simply rest on its pleading but must instead "set forth specific facts" that would be admissible in evidence in the event of trial from which a rational trier of fact could find for the nonmovant.[5] These facts must be clearly identified through

---

[1] Pretrial Order, Doc. 49, p. 6.

[2] Fed. R. Civ. P. 56(c).

[3] *Haynes v. Level 3 Commc'ns, LLC*, 456 F.3d 1215, 1219 (10th Cir. 2006).

[4] *Thom v. Bristol-Myers Squibb Co.*, 353 F.3d 848, 851 (10th Cir. 2003) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23 (1986)).

[5] *Id*. (citing Fed. R. Civ. P. 56(e)).

affidavits, deposition transcripts, or incorporated exhibits—conclusory allegations alone cannot survive a motion for summary judgment.[6] The Court views all evidence and reasonable inferences in the light most favorable to the party opposing summary judgment.[7]

### III. Analysis

In Kansas, the employer-employee relationship is governed by the employment-at-will doctrine.[8] Under this doctrine, either party may terminate the employment at any time for any reason at all.[9] But there are exceptions to this general rule, and Kansas law prohibits an employer from dismissing an employee in retaliation for exercising rights under the Kansas Workers' Compensation Act.[10]

In analyzing workers' compensation retaliation claims brought under Kansas law, the federal courts apply the burden-shifting framework established in *McDonnell Douglas Corp. v. Green*.[11] Under this framework, Ragsdale must establish a prima facie case of retaliation.[12] If Ragsdale meets his burden, Amsted Rail must come forward with a legitimate, nonretaliatory

---

[6] *Mitchell v. City of Moore, Okla.*, 218 F.3d 1190, 1197 (10th Cir. 2000) (citing *Adler v. Wal-Mart Stores, Inc.*, 144 F.3d 664, 670 (10th Cir. 1998)).

[7] *LifeWise Master Funding v. Telebank*, 374 F.3d 917, 927 (10th Cir. 2004).

[8] *Johnson v. Nat'l Beef Packing Co.*, 220 Kan. 52, 54, 551 P.2d 779, 781 (1976).

[9] *Id.*

[10] *Murphy v. City of Topeka*, 6 Kan. App. 2d 488, 495, 630 P.2d 186, 192 (1981); *Ortega v. IBP, Inc.*, 255 Kan. 513, 516–17, 874 P.2d 1188, 1191 (1994).

[11] *See Proctor v. United Parcel Serv.*, 502 F.3d 1200, 1211 (10th Cir. 2007).

[12] *Id.*

reason for the discharge.[13] Ragsdale then has the burden of showing that this reason is a pretext for unlawful retaliation.[14]

Amsted Rail contends that summary judgment should be granted because Ragsdale cannot establish a prima facie case of retaliation. And even if he can, Amsted Rail argues that Ragsdale has not met his burden of showing that its reason for his discharge was pretextual. Ragsdale argues that there is sufficient evidence of pretext and material facts in dispute such that Amsted Rail is not entitled to summary judgment.

**A. Ragsdale Can Establish a Prima Facie Case of Retaliation**

To establish a prima facie case of workers' compensation retaliation under Kansas law, a plaintiff must establish the following four elements:

> (1) a claim for worker's compensation benefits or an injury that might support a future worker's compensation claim; (2) the employer knew of the claim or injury; (3) the employer discharged the plaintiff; and (4) a causal connection between the claim (or injury) and the discharge.[15]

Amsted Rail disputes the second and fourth elements. Amsted Rail contends that Luce, who it maintains made the decision to fire Ragsdale and five other employees, was not aware of Ragsdale's injury or workers' compensation claim. Amsted Rail also alleges that Ragsdale has failed to show causation. Amsted Rail agrees that Ragsdale filed a claim and was terminated and does not dispute that the first and third elements are met.

---

[13] *Id.* at 1212.

[14] *Id.*

[15] *Macon v. United Parcel Serv., Inc.*, 743 F.3d 708, 713 (10th Cir. 2014) (citing *Rebarchek v. Farmers Co-op Elevator & Mercantile Ass'n*, 272 Kan. 546, 35 P.3d 892, 899 (2001)).

The Court is mindful of the established principle that a plaintiff's burden at the prima facie stage is not onerous.[16] With that burden in mind, the Court concludes that Ragsdale has established a prima facie case of retaliation. As for the second element, Amsted Rail asserts that Luce was the sole decision-maker and that he had no knowledge of Ragsdale's claim. But in his deposition, Luce at one time called it "a group decision" to terminate the six employees, including Ragsdale.[17] Luce testified that "the actual decision" was with McCullough and Tom Peterman, Amsted Rail's corporate attorney, on a conference call.[18] Luce also testified about a conference call that included McCullough, Robinson, and DeCola. Luce testified that "we . . . came to the same conclusion" to terminate the six employees as a result of the conference call.[19] That permits a reasonable inference that Luce made the decision with full participation from others who knew of Ragsdale's claim, including McCullough, who testified that she was aware of Ragsdale's pending claim when he was terminated. Therefore, there is sufficient evidence that the employer was aware of Ragsdale's claim.

As for the fourth element, evidence that Ragsdale was terminated five months after filing his claim—by itself—is not enough to establish a causal connection.[20] But Ragsdale has provided evidence in addition to close timing. Ragsdale offers three examples of evidence of discriminatory motive of Amsted Rail's management, specifically Robinson's allegedly hostile

---

[16] *Robinson v. Wilson Concrete Co.*, 913 F. Supp. 1476, 1483 (D. Kan. 1996).

[17] Deposition of Wayne Luce, Doc. 56-11, p. 4.

[18] *Id.*

[19] *Id.*

[20] *See Meiners v. Univ. of Kan.*, 359 F.3d 1222, 1231 (10th Cir. 2004) ("A six-week period between protected activity and adverse action may be sufficient, standing alone, to show causation, but a three-month period, standing alone is insufficient.").

actions towards him. First, Ragsdale asserts that Robinson asked him to pick up cigarette butts, a task no one else was asked to do, while he was on light duty. Second, Mark Jackson, one of the other five terminated employees, testified that Robinson called him into his office and asked, "why are you getting a lawyer for your workman's comp claim" and told Jackson "you don't need one."[21] Third, another of the other terminated employees, Trasey Green, stated in an affidavit that Robinson told him that "if people need a job, they need to be at work," referring to Ragsdale and four other employees who were being treated for workplace injuries or had pending claims.[22] Green also stated that Robinson questioned whether those five employees were hurt as much as they said they were.

McCullough testified that Robinson conducted the investigation and presented her with a formal report and a recommendation to terminate the employment of Ragsdale and five others. McCullough further testified that she forwarded Robinson's report to Luce. Luce and McCullough each testified that they then participated in a conference call with Robinson and DeCola. Luce testified that the decision to terminate the six employees was made after reviewing Robinson's report.

Keeping in mind that establishing a prima facie case is not an onerous burden, the Court finds that Robinson's comments to Jackson about having a lawyer and about Ragsdale missing work because of injury are sufficient evidence to establish a prima facie case of retaliatory discharge. Further, there is evidence that supports a link between Robinson's comments and his recommendation and participation in the termination decision. As a result, the Court will focus its ruling on the issue of pretext.

---

[21] Deposition of Mark Jackson, Doc. 59-6, pp. 5–6.

[22] Affidavit of Trasey Green, Doc. 59-5, pp. 2–3.

**B. Ragsdale Cannot Establish That Amsted Rail's Reason for Termination Is Pretext**

Because Ragsdale has established a prima facie case of retaliation, the burden shifts to Amsted Rail to articulate a legitimate, nonretaliatory reason for terminating Ragsdale's employment. Amsted Rail's evidence demonstrates that it terminated Ragsdale's employment because Ragsdale fraudulently collected unemployment benefits by misrepresenting his work status while working for Griffin Steel. The parties have stipulated that Amsted Rail told Ragsdale that his employment was terminated because he improperly collected unemployment benefits for a time period when he was working at Griffin Wheel. The parties also have stipulated that Ragsdale received an overpayment of unemployment benefits during his employment with Amsted Rail. Thus, the Court finds that Amsted Rail has satisfied its burden of articulating a nonretaliatory reason for terminating Ragsdale's employment.

As a result, the burden of persuasion shifts back to Ragsdale to demonstrate a genuine dispute of material fact as to whether Amsted Rail's stated reason is unworthy of belief. To avoid summary judgment after an employer has offered a reason for termination, "the employee must assert specific facts establishing a triable issue as to whether the employer's reason for the discharge is mere cover-up or pretext for retaliatory discharge."[23] To demonstrate pretext, an employee must show more than mere conjecture that the employer's reason for termination is insufficient.[24] Generally, an employee can show pretext "by such weaknesses, implausibilities, inconsistencies, or contradictions in the employer's proffered legitimate reasons for its action

---

[23] *Bracken v. Dixon Indus., Inc.*, 272 Kan. 1272, 1276, 38 P.3d 679, 682 (2002)).

[24] *Morgan v. Hilti, Inc.*, 108 F.3d 1319, 1323 (10th Cir. 1997).

that a reasonable factfinder could rationally find them unworthy of credence and hence infer that the employer did not act for the asserted non-discriminatory reasons."[25]

The question is whether the employer honestly believed its stated reason and acted in good faith on that belief.[26] The Court does not ask whether the reason was wise, fair, or correct.[27] To determine whether the employer honestly believed its explanation, the Court examines the facts as they appear to the person making the decision, not the plaintiff's subjective evaluation.[28] A successful plaintiff must advance "evidence that the employer didn't really believe its proffered reasons for action and thus may have been pursuing a hidden discriminatory agenda."[29]

Ultimately, the employee's burden is to establish retaliation by a preponderance of the evidence, but the evidence itself must be clear and convincing in nature.[30] An employee may show pretext in a variety of ways. For example: 1) by showing that the stated reason is false, 2) by showing that the employer acted contrary to a written company policy, or 3) or by showing that the employer acted contrary to an unwritten company policy or practice.[31] At the summary judgment phase, the Court needs only to determine whether the evidence Ragsdale presented,

---

[25] *Lobato v. New Mexico Environment Dept.*, 733 F.3d 1283, 1289 (10th Cir. 2013) (quoting *Morgan*, 108 F.3d at 1323).

[26] *Id.*

[27] *Id.*

[28] *Id.*

[29] *Johnson v. Weld Cnty.*, 594 F.3d 1202, 1211 (10th Cir. 2010).

[30] *Foster v. AlliedSignal, Inc.*, 293 F.3d 1187, 1194–95 (10th Cir. 2002) (quoting *Ortega*, 255 Kan. at 528, 874 P.2d at 1198).

[31] *Macon*, 743 F.3d at 714.

Case 2:13-cv-02257-EFM   Document 63   Filed 10/08/14   Page 10 of 15

viewed in the light most favorable to him, could allow a reasonable jury to find that Amsted Rail's reasons were pretextual.[32]

Here, Ragsdale offers three reasons to show that Amsted Rail's stated reason for his termination was a pretext for unlawful retaliation for filing a workers' compensation claim. For one, Ragsdale points out that he was fired almost two and a half years after he last received improper unemployment benefits and that Amsted Rail knew about it long before the six employees were terminated. In addition, Ragsdale asserts that there were other employees that received an overpayment of unemployment benefits who were not terminated. Specifically, Ragsdale alleges that Sigmund Stewart and other employees also received improper benefits and are still employed. Ragsdale asserts that this is evidence of disparate treatment and pretext. Also, Ragsdale reiterates that Robinson's comments and actions show a discriminatory motive and that the fact that all six of the terminated employees had filed workers' compensation claims is enough to show pretext.

**1. There Is No Evidence That a Decision-Maker Knew of Ragsdale's Involvement Earlier**

Ragsdale attempts to downplay Amsted Rail's concern about employees improperly receiving unemployment benefits by offering evidence that the company knew about it long before the six employees were terminated in 2012. Specifically, Ragsdale testified that he had a conversation with a former Griffin Wheel human resources manager in 2009 or 2010 about him receiving an overpayment of unemployment benefits.[33] This conversation, Ragsdale says, is evidence that Amsted Rail knew about the problem before 2012. Under Ragsdale's theory,

---

[32] *Potter v. Synerlink Corp.*, 562 Fed.Appx. 665, 674–75 (10th Cir. 2014).

[33] Deposition of Steven Ragsdale, Doc. 59-2, p. 9.

Amsted Rail was really not that concerned about the overpayment problem but used it as an excuse to fire him two years later. This excuse, Ragsdale alleges, is pretext for the real reason for his termination—unlawful retaliation for being injured on the job.

Ragsdale's testimony does not indicate that any Amsted Rail managers involved in the 2012 termination decisions were aware of any overpayment of unemployment benefits before 2012. In fact, Ragsdale agrees that there is no evidence that Luce, McCullough, Robinson, or DeCola knew of any overpayment of unemployment benefits until the 2012 investigation. Ragsdale's testimony only alleges that one former manager knew about Ragsdale's involvement and no one else's in 2009 or 2010. Therefore, the proffered testimony is not probative of the decision-makers' knowledge of Ragsdale's involvement before the 2012 investigation. Without a link between the unnamed former manager and anyone associated with the decision to terminate Ragsdale's employment in 2012, Ragsdale fails to establish pretext.

### 2. There Is No Admissible Evidence That Amsted Rail Knew of Other Wrongdoers

Ragsdale alleges that there were other Amsted Rail employees who received an overpayment of unemployment benefits who were not terminated. Specifically, Ragsdale named Stewart and others who are still employed by Amsted Rail. Ragsdale argues the other employees' continued employment is evidence of disparate treatment and pretext.

Notably, Ragsdale's evidence is based on what Stewart allegedly told him and another employee. Specifically, Ragsdale testified in his deposition that he believed Stewart also received an overpayment because "[h]e told me."[34] In addition, Ragsdale submitted an affidavit of David Kimbrell—another terminated employee—who stated that he "was told directly" by

---

[34] Deposition of Steven Ragsdale, Doc. 59-2, p. 7.

-11-

Stewart that Stewart had received an overpayment of benefits and was never confronted by Amsted Rail.[35] As presented, Stewart's out-of-court statements offered for the truth of the matter asserted are inadmissible hearsay.[36] And Federal Rule of Civil Procedure 56 precludes the use of inadmissible hearsay testimony in affidavits and depositions submitted in opposition to summary judgment.[37] Ragsdale argues that Stewart's statements are admissible under the hearsay exception for statements against interest. But Ragsdale makes no attempt to show that Stewart was unavailable as a witness, as is required for the exception to apply.[38] Therefore, Ragsdale's submitted evidence may not be considered by the Court.

Moreover, even if Ragsdale's evidence is admissible, he fails to provide evidence that Amsted Rail knew about Stewart's alleged misconduct. In fact, Ragsdale testified that he did not know if Amsted Rail knew whether Stewart received an overpayment.[39] And in his affidavit, Kimbrell stated that Stewart told him that he had never been confronted or disciplined by Amsted Rail.[40] Kimbrell added that he disclosed Stewart's admission during his deposition in a related case in December 2013.[41] Amsted Rail submitted a declaration by McCullough, who stated that the company investigated Stewart and seven other employees—who Ragsdale

---

[35] Affidavit of David Kimbrell, Doc. 59-8, p. 2.

[36] Fed. R. Evid. 801(c).

[37] Fed. R. Civ. P. 56(e); *Starr v. Pearle Vision, Inc.*, 54 F.3d 1548, 1555 (10th Cir. 1995) (holding that Federal Rule of Civil Procedure 56 "precludes the use of inadmissible hearsay testimony in depositions submitted in support of, or in opposition to, summary judgment"); *see also Trevizo v. Adams*, 455 F.3d 1155, 1160 (10th Cir. 2006) (noting that a court may consider only admissible evidence to determine whether genuine issues of material fact make a jury trial necessary).

[38] *See Gibbons v. Hidden Meadow, LLC*, 524 Fed.Appx. 451, 453 (10th Cir. 2013) (discussing Fed. R. Evid. 804(b)(3)).

[39] Deposition of Steven Ragsdale, Doc. 59-2, p. 7.

[40] Affidavit of David Kimbrell, Doc. 59-8, p. 2.

[41] *Id.*

testified received overpayments and were not terminated—and were unable to substantiate Ragsdale's allegation.[42] Further, McCullough declared that Stewart had denied to her any wrongdoing and denied making any admissions attributed to him by Ragsdale and Kimbrell.[43] Therefore, the Court finds that Ragsdale has presented no evidence of disparate treatment and pretext because there is no admissible evidence of wrongdoing by other employees and no evidence that Amsted Rail knew about any alleged wrongdoing by other employees.[44]

### 3. Robinson's Comments Do Not Rise Above Mere Conjecture of Illegal Motive

Finally, Ragsdale offers the same evidence of Robinson's statements to suggest that discriminatory animus against those with workplace injuries is the real reason for his termination. As noted previously, Robinson's comments to Jackson about having a lawyer and to Green about Ragsdale and other employees missing work because of injury meet the lower standard of sufficiently alleging causation to establish a prima facie case of retaliatory discharge. But to show pretext, a plaintiff's burden is to establish retaliation by a preponderance of the evidence, and the evidence itself must be clear and convincing in nature.[45] A plaintiff must demonstrate a genuine dispute of fact as to whether Amsted Rail's stated reason is unworthy of belief.

Ultimately, the question is whether Amsted Rail honestly believes Ragsdale was terminated because he improperly received unemployment benefits while working at Griffin

---

[42] Declaration of Gina McCullough, Doc. 56-10, pp. 2–3.

[43] *Id.* at 3.

[44] *See Timmerman v. U.S. Bank, N.A.*, 483 F.3d 1106, 1121 (10th Cir. 2007) (noting that discriminatory animus cannot explain disparate treatment without evidence that an employer knew about another employee's misconduct).

[45] *See Foster*, 293 F.3d at 1194–95.

Wheel.[46] To answer this question, the Court examines the facts as they appeared to the decision-makers at the time, not Ragsdale's subjective evaluation of the situation.[47] Here, the Court notes that Ragsdale admits that he—and the other five terminated employees—knowingly and improperly applied for and received unemployment benefits while working at Griffin Wheel. All six current employees on the list of those receiving an overpayment of benefits were terminated. And the Court notes that Amsted Rail's highest-ranking manager, Luce, consistently testified that the six employees were terminated for that reason:

> Well, in general, the six employees were terminated for falsifying the fact that they collected unemployment insurance when they were working during those weeks, and it was done on a repetitive basis where they would answer questions whether or not they worked during certain weeks, where our payroll records and our timekeeping records showed they in fact did work, and they were telling unemployment insurance they did not work. That was the general.
> And we looked at each specific situation, taking into account people's, you know, employment history, to determine if there was any mitigating factors to look at that would, you know, offset the gross misconduct that they participated in. We did not see any in any of the six situations and determined that ending the employment relationship was the proper decision.[48]

The Court grants summary judgment to Amsted Rail on this ground. Ragsdale has failed to come forward with clear and convincing evidence that Luce or any other decision-maker did not believe the stated reason for Ragsdale's termination. Ragsdale offers isolated comments from Robinson, but the comments do not rise above mere conjecture that Amsted Rail's reason for termination is insufficient.[49] Rather, Amsted Rail has provided evidence that supports

---

[46] *See Lobato*, 733 F.3d at 1289.

[47] *See id.*

[48] Deposition of Wayne Luce, Doc. 56-11, pp. 5–6.

[49] *See Morgan*, 108 F.3d at 1323.

consistency in its decision in that it terminated two other employees it found to have received an overpayment of unemployment benefits, neither of whom reported any injuries or made a workers' compensation claim while at Griffin Wheel. And Stewart was not terminated despite suffering 12 work-related injuries. Ultimately, Ragsdale failed to show any weakness, implausibility, inconsistency, or contradiction in Amsted Rail's proffered legitimate reason for termination such that a reasonable factfinder could rationally find it unworthy of belief.[50] In short, Ragsdale failed to advance evidence that Amsted Rail "didn't really believe its proffered reasons for action and thus may have been pursuing a hidden discriminatory agenda."[51] As a result, the Court grants summary judgment to Amsted Rail.

**IT IS THEREFORE ORDERED** that Amsted Rail's Motion for Summary Judgment (Doc. 55) is hereby **GRANTED**.

**IT IS SO ORDERED**.

Dated this 7th day of October, 2014.

ERIC F. MELGREN
UNITED STATES DISTRICT JUDGE

---

[50] *See Lobato*, 733 F.3d at 1289.

[51] *See Johnson*, 594 F.3d at 1211.

-15-